Moses *vs.* Bagley & Sewell.

---

RAPHAEL J. MOSES, plaintiff in error, *vs.* BAGLEY & SEWELL, defendants in error.

1. An attorney at law who agrees to collect a note for a certain per centum upon the "*amount collected*," is not entitled to fees for suing the case to judgment, but to entitle him to fees under his contract, the money must be collected.

2. In proceeding to collect, such attorney must bring to the business of collection, diligence and skill, and under a contract to receive ten per cent. if a compromise be effected, and fifteen per cent. if the case *be litigated*, his contract extends to *all litigation* touching the collection of the money, including what he may see fit voluntarily to do without a contract for additional fees, and embracing the contest with other judgments and the defense of another suit against the same defendant, if in the way of his collection of the money, especially when at the time the contract was made, it was understood by the parties thereto, that such other suit was pending, and the necessity and mode of defending it was considered by the client and attorney.

3. If a law firm undertake such collection, and pending the litigation it be dissolved, the partner who remains in charge of the case and goes on with the litigation, does so under the contract his firm had made, if there be no evidence that a new contract was made.

Moses *vs.* Bagley & Sewell.

4. The fact that in a conversation subsequent to the original contract and after the dissolution of the firm, the attorney mentioned to the client that the litigation was heavier than had been contemplated by them, and he would charge additional fees, if the case was compromised, to the extent of $1,500 00, the client then being about to leave for Macon to try to compromise it, to which remark the client made no response, does not amount to a rescission or modification of the contract.

5. A contract between client and attorney, wherein it is stipulated that the attorney shall receive a certain per cent. for the collection of a claim upon, or out of, the amount collected, is not champertous, there being no agreement on the part of the attorney to bear the expenses of the litigation, or to save the client harmless from costs.

Attorney and client. Fees. Contracts. Champerty. Before Judge JAMES JOHNSON. Muscogee Superior Court. October Term, 1874.

Reported in the opinion.

R. J. MOSES, for plaintiff in error.

PEABODY & BRANNON, for defendant.

JACKSON, Judge.

Bagley & Sewell placed in the hands of Moses & Garrard, a law firm in Columbus, Georgia, notes for collection on the Rock Island Paper Mill Company, in the spring of 1867, and White, Sheffield & Company and Todd & Rafferty, at their instance, also placed notes in the hands of the same firm for collection, on the same company, and steps were taken to collect the same. In the fall of that year, R. J. Moses, one of the firm, visited New York, and while there made a contract with White, Sheffield & Company, in relation to the collection of their notes, which contract was in these words:

"NEW YORK, December 28th, 1867.

"Received of White, Sheffield & Company, on account of fees in case of Rock Island Paper Mills, $100 00. We are to charge ten per cent. on amount collected, if case is compromised, and fifteen per cent. if litigated, and in either event the $100 00 paid now is to be credited as an advance on said fees.                                    "MOSES & GARRARD."

On returning to Georgia, on the 1st of January, 1868, R. J. Moses addressed a letter to Bagley & Sewell, for the firm, in which he stated, "I drew on you to-day for $100 00, which please pay. White, Sheffield & Company and Todd & Rafferty paid me in proportion when in New York, and we agreed that if the cases were compromised our firm should receive ten per cent. on amount collected, and if litigated further fifteen per cent. and in either case, the $100 00 now paid, to be credited as an advance payment." In the same letter allusion is made to a fraudulent suit brought by Joseph Winter, in the interest of the company for $20,000 00, which he promises to defeat, even by bringing a bill in equity if necessary, and the difficulties and delays are alluded to. The $100 00 draft was paid by Bagley & Sewell. Attachments and garnishments were sued out by Moses & Garrard, which were dismissed by the superior court of Muscogee county for want of payment of taxes; the cases were moved to the United States Court, but did not arrive in time for the docket (without fault on the part of Mosses & Garrard,) and were dismissed there. R. J. Moses then, the firm having been dissolved, sued out new attachments and garnishments, and gave new bonds, signing as attorney for the clients and as their surety; and finally, after the cases had been brought to this court twice on different points, and after fighting off the $20,000 00 Winter suit, and reducing it to something over $100 00, some $6,000 00 was collected. In 1871, pending the litigation, and before the cases were dismissed at Savannah, Mr. Bagley, of the firm of Bagley & Sewell, saw Mr. Moses in Columbus, and advised with him about a settlement or compromise. Moses advised against it, but said if he did compromise, he must bear in mind that the litigation had assumed proportions that neither of them had contemplated; that he should charge additional fees, and if a compromise was made his fee would be $1,500; Bagley made no reply. Bagley & Sewell purchased the claim of White, Sheffield & Company, and were recognized by Moses as the owners of that paper also. After the money was thus collected a dispute arose as to fees, and to settle it,

this rule against R. J. Moses was brought to the superior court of Muscogee county. The jury, under the charge of the court, found for the plaintiffs in the amount collected after deducting fifteen per cent. and the case is brought before us on exceptions to the charges and refusals to charge. These charges and refusals to charge, and the exceptions thereto, and assignments of error thereon, we think, may be reduced to four points:

1. First, the court charged to the effect that under the contract for a certain per cent. upon the *amount collected*, the defendant to the rule could not demand fees for reducing the claims to judgment nor estimate his fees upon the amount of the judgments. We agree with the court. His contract was *to collect*, and the plaintiff's contract was to pay him for *collecting*, and a per centum upon the sum *collected*.

2. The second point to be gathered from the charges and refusals to charge of the court is, that he ruled to the effect that under a contract to receive ten per cent. if the cases were compromised, and fifteen if litigated, the contract binds the attorney to attend to *all litigation* necessary to collect to the extent of defending other suits in his way, or contesting other judgments. Again, we agree with the court below. We can put no other construction upon this contract. The stipulation is explicit: if compromised so much is to be paid, if litigated, so much more. It is not stipulated that if the litigation be light or be confined to a particular court, the fee shall be so much; but if it be litigated it is to be fifteen per cent.; the extent of the litigation is not hinted at. So far as the defense of the Winter suit for $20,000 00 is concerned, that is mentioned in the letter in which Mr. Moses draws for $100 00, and narrates the contract; and there he states that he expects to defend that suit even to the extent of filing a bill in equity if necessary. Taking the original contract with White, Sheffield & Company, and its repetition in this letter, and then the allusion to the Winter suit and suggestions about the necessity and mode of defending it, and we cannot conclude otherwise than that this suit and other similar difficul-

Moses *vs.* Bagley & Sewell.

ties in the way of collecting these claims were in the purview of the contract. Besides, if an attorney go voluntarily forward and do extra labor in litigating for his client; if he go beyond the strict letter of the contract without communicating with and having an understanding with his client, and contracting for the additional labor, the word litigation in the contract will bind him, and he can demand no additional compensation. No man has the right, when another employs him to do a particular piece of work at a certain price, to put extra labor upon the job and charge for it, without first consulting his employer and enlarging the contract.

3. The third point is that the court ruled that if a law firm undertake the collection of notes, and pending the litigation it be dissolved, the partner who remains and proceeds with the litigation is bound by the contract, unless he makes a new one. Surely, this is too clear to require argument to fortify or illustrate it.

4. The fourth point is that the court ruled to the effect that if in a conversation, subsequently to the making the contract, the parties get together, and the attorney says that the litigation is heavier than either of them contemplated, and he expects to charge additional fees, or words to that effect, and the client makes no response, such failure to respond will not rescind or modify the contract. We suppose that the court meant it took two to make a bargain; and in this case, and under the circumstances of this interview, the silence of the party did not amount to acquiescence. Again we are constrained to rule that the court was right. Mr. Moses was bound under the contract to litigate, and he could not have abandoned it without subjecting himself to suit. Certainly he could not have done so and received any compensation for past services. He lost nothing by the silence of Mr. Bagley. It was no fraud upon him in any legal view of the word. Bagley had the right to stand on his contract, and he did so. It would have been more manly and frank for him to have spoken out, but silence here certainly did not give assent. And Mr. Moses himself could then and there

have had the matter clearly understood. It would have been easy for him to press for an answer. He was content with silence on the other side, and we think that silence did not annul or modify the contract. Something was said in argument about the contract not having been made with Bagley & Sewell. But it is clear to us that the contract made with White, Sheffield & Company, and its repetition in the letter of Mosses & Garrard, and the draft for the $100 00 and its payment, to be credited upon the fees mentioned in the letter, puts the contract beyond all doubt. Besides, it is not denied in the answer to the rule.

5. Nor is the contract *champertous*. Moses & Garrard did not stipulate to pay the expenses of the litigation, or to save the plaintiffs harmless from the costs of court; and that element is essential to make the common law offense of *champerty*: 4 Blackstone, 135; Chitty on Contracts, 584; Bouvier's Law Dictionary, title *champerty*, and Webster's Unabridged Dictionary, same word.

We have no hesitation in saying, at least I do so for myself, and I believe my brethren both agree with me, that the defendant to this rule has been poorly compensated for this onerous and heavy litigation, and a *quantum meruit* would largely increase his fees; but the law holds him to his contract, and we must administer the law.

Judgment affirmed.