TURNER et al. v. FIRST NAT. BANK & TRUST CO. OF MUSKOGEE et al.

No. 35800.

Supreme Court of Oklahoma.

June 23, 1953.

Rehearing Denied Nov. 10, 1953.

J. Eben Hart, Oklahoma City, Forrester Brewster, Muskogee, for plaintiffs in error.

George W. Leopold, Muskogee, for defendant, First Nat. Bank & Trust Co., Muskogee, executor.

Julian B. Fite, Muskogee, for Bacone College and Bertha B. Morgan, defendants in error.

Charles A. Moon, Earl Boyd Pierce and Thomas L. Gibson, Muskogee, amici curiae.

HALLEY, Chief Justice.

This case involves a construction of section 44, Title 84, O.S.1951, commonly referred to as the "Forced Heir Statute." The facts are unusual in that here the surviving spouse was hopelessly insane and incapable of making an election to take under the will of her deceased husband or under the law of succession as provided in section 213(5), Title 84, O.S.1951.

Fred E. Turner died January 1, 1950, while a resident of Muskogee County, leaving a will by which his surviving wife, Gunter P. Turner, was devised one-half of his estate and the remaining one-half was devised to Bacone College, except a life estate in certain real property which was given to Bertha B. Morgan.

Prior to the death of Fred E. Turner his wife had suffered a stroke which rendered her mentally incompetent, and expert testimony shows that she will not recover. They had been married for approximately 50 years, but had no children and Gunter P. Turner was the sole heir of her deceased husband, and would take his entire estate if she could elect to under the law of succession, subdivision 5, section 213, Title 84, O.S.1951.

The First National Bank and Trust Company of Muskogee was acting as executor of the estate of Fred E. Turner. His will had been admitted to probate. Kay Wilson, Jr. had qualified as guardian of the person and estate of Gunter P. Turner, an incompetent.

The guardian of Gunter P. Turner petitioned the County Court to elect for her to take under the law of succession and not under the will. The County Court elected that she take under the will of Fred E. Turner. From that order the guardian appealed to the District Court.

The guardian had filed a petition in the District Court praying that the District Court elect for Gunter P. Turner that she take under the law of succession and not under the will. The appeal of the guardian from the County Court Order that Mrs. Turner take under the will and the original action filed by the guardian in the District Court were consolidated.

After hearing testimony and considering the voluminous documentary evidence the District Court entered an order and decree whereby the guardian was ordered to file in the County Court an election on behalf of Gunter P. Turner that she take under the will and abide by the terms thereof. Findings of fact and conclusions of law were filed. It is from the order of the District Court ordering the guardian to file an election to take under the will that the guardian has appealed.

It is contended that the court erred in denying the petition of the guardian to take her share of the estate of her deceased husband under the law of succession, being a share of greater value than she would obtain under the will, and requiring the

guardian to elect to take for her the lesser share in value under the will.

At the commencement of the trial it was stipulated that Gunter P. Turner would take property substantially greater in value under the law than she would take under the will.

The other devisees under the will of Fred E. Turner, being Bacone College and Bertha B. Morgan, contended that the election made by the court that Gunter P. Turner take under the will was legal and for the best interests of the incompetent when considered in connection with all equitable considerations and is in accord with the testimony offered at the hearing of the guardian's petition asking that the election for the incompetent be that she take under the law of succession. Under the admitted facts the applicable statute of descent is subsection 5, section 213, Title 84, O.S. 1951 which is as follows:

"If the decedent leave a surviving husband or wife, and no issue, and no father, nor mother, nor brother, nor sister, the whole estate goes to the surviving husband or wife."

The right of election by the surviving spouse to take under the will or under the law of succession arises under section 44, Title 84, O.S.1951, which is as follows:

"Every estate in property may be disposed of by will; provided however, that a will shall be subservient to any antenuptial marriage contract in writing; but no spouse shall bequeath or devise away from the other so much of the estate of the testator that the other spouse would receive less in value than would be obtained through succession by law; provided, however, that of the property not acquired by joint industry during coverture the testator be not required to devise or bequeath more than one half thereof in value to the surviving spouse; provided further, that no person shall by will dispose of property which could not be by the testator alienated, encumbered or conveyed while living, except that the homestead may be devised by one spouse to the other."

■ We have held that the surviving spouse may elect to take under a will or as an heir at law. York v. Trigg, 87 Okl. 214, 209 P. 417; Long v. Darks, 184 Okl. 449, 87 P.2d 972; Appeal of Baker's Estate, 170 Okl. 595, 41 P.2d 640.

■ We think that the power is vested in the County Court to make the election for the incompetent surviving spouse under Article VII, § 13 of the Oklahoma Constitution, which is as follows:

"The County Court shall have the general jurisdiction of a Probate Court. It shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards; grant letters testamentary and of administration, settle accounts of executors, administrators, and guardians; transact all business appertaining to the estates of deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the sale, settlement, partition, and distribution of the estates thereof. * * *"

And 58 O.S.1951 § 1:

"The county court has probate jurisdiction, and the judge thereof power, which must be exercised in the cases, and in the manner prescribed by statute:"

"To appoint and remove guardians for infants, and for persons insane or otherwise incompetent; to compel payment and delivery by them of money or property belonging to their wards, to control their conduct and settle their accounts."

■ In Odle v. Baskins, 190 Okl. 664, 126 P.2d 276, we held that the County Court was the place to make the election to take under the will or according to law. The overwhelming weight of authority in the United States is that the election shall be made in the court having jurisdiction of the estate of the incompetent or a court of equity. See note II A 1, 74 A.L.R. 454 and note II A 1, in 147 A.L.R. 338. Also, 57 Am.Jur. Wills, § 1528 and 69 C.J. Wills, § 2374, 5 and 6.

On appeal to the District Court that court had the authority to reverse, affirm, or modify the judgment of the County Court. 58 O.S.1951 §§ 734 and 735. The District Court after a full and complete hearing affirmed the action of the County Court and directed that the incompetent widow take under the will.

The courts of other jurisdictions uniformly hold that the fact that the surviving spouse would get more by electing to take under the laws of succession than under the will does not make it mandatory for the court to direct that she so take but may decide that she take under the will. Whether the court should decide that the incompetent take one way or the other depends upon the facts and circumstances. Those things that should be considered by the court are discussed in numerous cases. We will call attention to some.

In Hogan v. Roche, 95 N.H. 368, 63 A.2d 794, 795, the Supreme Court of New Hampshire states that in making an election the court should consider the following matters:

"The defendant does not dispute these findings, which are properly based upon the guardian's own testimony, but says that such considerations were not necessary to a valid choice and since it appears he took the best course for his ward financially the election must be upheld.

"While this conclusion may be open to some question, as under the will the widow might have had the use of the entire estate, we base our opinion on the fact that our law does not sustain the defendant's position. Wentworth v. Waldron [86 N.H. 559, 172 A. 247], supra. Financial circumstances, while important, are but one of several factors which a guardian should weigh in making his choice.

" * * * It appears the better reasoned decisions are in agreement in recognizing that 'not every widow disregards her husband's last wishes * * merely because she would obtain a greater quantum of his estate by so doing; sentiment enters into such situations * * *.' "

The Supreme Court of Florida in First National Bank v. McDonald, 100 Fla. 675, 130 So. 596, 598, listed the following matters that should guide the court in making an election for an incompetent widow:

"In determining what is for the best interest of the afflicted widow, the chancellor will generally be influenced by these considerations: (1) The husband's right to dispose of his estate is limited by the right given the widow to renounce the provisions of the will in her behalf and take under the statute, but the sole reason in law for giving the widow the right to renounce is to insure ample provision for her personal needs and comforts. (2) Her personal needs and comforts may not be confined to pure monetary considerations. (3) The matter of enriching the widow's estate and passing something to her kinspeople has no place in the chancellor's consideration. (4) The kinspeople of the wife have no claim direct or indirect on the estate of the husband. (5) The fact that a permanently insane widow knows nothing of the value of money, cannot use it with discretion and has no need for money nor property save to furnish ample comforts and needs, may be considered. (6) It may also be borne in mind that, when the husband has made ample provision for his insane wife, he has an inherent right to dispose of his property as he pleases, provided the disposition be not contrary to public policy. Other considerations will no doubt arise from time to time."

In the last case cited the court elected that the survivor should take under the will which gave her the family home, an automobile, and the income from $400,000 for life. Her share under the law amounted to $2,000,000.

Van Steenwyck v. Washburn, 59 Wis. 483, 17 N.W. 289, 295, is a leading case upon the question of what considerations should guide the court in making an election for an incompetent surviving spouse. There the will made ample provision for all of the wants, care, and comfort of the surviving spouse. In this respect the facts

in that case are very similar to those in the case before us. The court said in part:

"* * * It is evident if the court should elect what the law gives the widow in case of intestacy that the intentions of the testator will in a measure be defeated. Such an election would greatly interfere with the scheme of the will. Defeating a will, in any substantial provision, is much like breaking it. It is defeating it pro tanto. The right to dispose of one's estate in accordance with his own wishes is a sacred right, which a court of equity will not disregard or destroy. The late chief justice, in Dodge v. Williams, 46 Wis. 70 [1 N.W. 92, 50 N.W. 1103], says: 'Every one should have the same power to dispose by will, after his death, in accordance with his own wishes, of whatever he may leave behind him in his own sole right, as he had in life to dispose of it by contract or by gift; and it is as much the duty of courts to uphold and enforce his will after death, as to uphold and enforce his contracts made during life.' [46 Wis. at] pages 90, 91 [50 N.W. at page 1104].

"It seems to us these considerations are entitled to some weight in making the election in this case. If the court can regard them, if it has any discretion in the matter, they should exert their due influence on our judgment. But if the court must elect for the widow the more valuable interest, without reference to any other consideration, then it really will exercise no discretion. But we think it is the clear duty of the court to exercise a sound discretion in the matter—to consider everything having a legitimate bearing on the election to be made. Consequently, acting upon that principle, the court, in view of Mrs. Washburn's insane condition, in view of the liberal and ample provision made for her benefit in the will, and in consideration of all the facts, does elect for her that provision as being on the whole the best and most advantageous for her interest and welfare."

Mr. Turner's estate amounted to approximately $600,000 and Mrs. Turner has property of about the same value. They had been husband and wife for 50 years. She had made a will leaving all of her estate to her husband, should he survive her. Throughout the years they had been very generous in their contributions to various organizations and both were interested in young people who needed help in securing an education. Mrs. Turner had been a student at Bacone College as a girl, and she and her husband had been generous toward the school and its students as individuals.

It is not possible to determine from the record just what amount of their property was acquired through their joint industry. Mr. Turner had aquired a considerable amount by gifts from his mother, Julia Turner. He had given his wife a large amount of the property which she holds and much of her income represents rentals from the property he had given her. The District Court made the following findings:

"Mrs. Turner had affection for the members of her own family, but had no real interest in accumulating property for the purpose of transmitting it to them. She perhaps would have liked some of her personal belongings to remain with her own kin, to whom, if she had remained competent, she might have made gifts while living; but she had no desire to will any major part of her own property to her relatives. She would not have desired to acquire property from her husband merely to have her own kin inherit it. Her keen desire to accumulate property cannot be attributed to any wish to enrich her relatives."

"Fred E. Turner and Gunter P. Turner lived together in complete domestic harmony for approximately a half century, with like interests, like impulses, like business ingenuity, and like sentiments toward charities and educational institutions, and always with great respect for each other's ideas and actions. The evidence offered to suggest a rift in their harmonious relations is meager and is in no de-

gree of sufficient importance to prove that Mrs. Turner had turned or would turn against her husband or that she would wish to thwart his purposes, as expressed in his will."

"In electing for an incompetent spouse the court should put itself as far as possible in the place of the surviving spouse by assuming that she has at least ordinary business ability, and in addition the qualities of fairness, loyalty, and respect for the memory and good deeds of the deceased spouse, that is, that she has all the qualifications of a true and loyal surviving spouse. This is true whether the action of the court be one in the exercise of a discretion merely or in the exercise of equitable powers inherent in the application of the principle of election.

"While the right to make a will is governed by statute, such right was so anciently granted that statutes restricting the right will be strictly construed; and due respect to the husband's right will be given in deciding whether the will should be renounced. From long association with her husband, the surviving spouse may know and understand his purposes and agree with the method of disposing of his property and be in accord with the nature of his devises and legacies."

"Admittedly there is no want or comfort that Mrs. Turner may or can have that cannot be fulfilled out of the half interest willed her, to say nothing of tions of a true and loyal surviving much more than adequate to take care of her own needs and the utmost of service, convenience, and comfort that can be given her in her condition."

We find in the evidence no direct testimony from which it may be inferred that if Mrs. Turner were competent she would wish to deprive her deceased husband of the privilege of disposing of his estate as provided in his will. He had been very generous with Mrs. Turner and the evidence supports the finding of the court above set out that she is surrounded with all the care and comforts possible to give her in her present condition.

As late as 1937 Mrs. Turner is shown to have wanted her husband to have her entire estate, should he survive her. From her conduct it is hardly conceivable that she would, if normal, want to disregard his will. There is not a bequest therein to, which she would probably object. One-half of his estate is devised to her. The remaining one-half, except a life estate in certain real property is given to Bacone College, a worthy institution, for which she had for years shown her affection and upon which she and her husband had bestowed their bounty in a quiet way. The life estate in one piece of real property given to Mrs. Morgan should meet with Mrs. Turner's approval as a reward for her personal services to Mrs. Turner throughout the years.

We cannot agree with the argument that the election of the court that Mrs. Turner take under the will is illegal in that it gives her less than she would take under the law. If, where the surviving spouse is unable to elect, the court must elect for the incompetent survivor solely upon the basis of which election would render the greater material value, then the matter of election would be merely a question of mathematics, a task for appraisers and accountants. The word "Election" means the right and power to choose without restrictions.

The statute under which the election is made carries no such meaning. Such a theory would destroy the freedom of election clearly intended by the statute. As was said in re Harris' Estate, 351 Pa. 368, 41 A.2d 715, 722:

"* * * It is common knowledge that not every widow disregards her husband's last wishes for the disposition of his property merely because she would obtain a greater quantum of his estate by so doing; sentiment enters into such situations quite as much as considerations of material advantage, and, if she is reasonably provided for in her husband's will or her wants are otherwise adequately supplied, it does

not follow, just because such provision may not be as much as she might elect, that she would file an election to take against his will. Therefore, when the court acts on behalf of a mentally defective widow it should not be controlled by mere mathematical calculations of the financial results that would accrue to her one way or the other."

We think the well established facts show that Mrs. Turner was not interested in leaving her estate to her own relatives. Had she been so interested she would not have devised all of her property to her husband as late as 1937, when she was perfectly normal. Her will is positive proof that she wanted her husband, should he survive her, to have her property to use and dispose of as he pleased. That was natural in view of their long married life and his generosity toward her at all times. He appeared to want her to have an estate that matched his own. She responded with gratitude by providing in her will that her entire estate pass to him if he should survive her.

Mrs. Turner is being provided with every possible comfort. Her own estate is sufficient to more than meet her needs and together with a one-half interest in Mr. Turner's estate provides an income far in excess of all she needs for the best of care. She is 84 years of age. If she were normal it is reasonable to think that she would want to respect the wishes of her deceased husband to help provide an education for the students of Bacone College, many of whom have not the means to pay all the expenses of an education.

An examination of the evidence shows clearly that the findings of the court were amply supported by the evidence and we think the conclusions reached by the court are in accord with the great weight of authority.

The judgment is therefore affirmed.

JOHNSON, V. C. J., and WELCH, DAVISON, ARNOLD and WILLIAMS, JJ., concur.

CORN and O'NEAL, JJ., dissent.