Waldo T. ODEN, Administrator of the Estate of Mary C. Russell, Deceased, and Alice Doris, Plaintiffs in Error,

v.

O. A. RUSSELL, Executor of the Estate of W. D. Russell, Deceased, Defendant in Error.

No. 39251.

Supreme Court of Oklahoma.

March 27, 1962.

As Corrected May 2, 1962.

Rehearing Denied May 2, 1962.

Tal Oden, Altus, for plaintiffs in error.

Montgomery & Montgomery, and Hughes & Hughes, Hobart, for defendant in error.

BLACKBIRD, Vice Chief Justice.

The broad issue in this appeal is the efficacy of an election made by an incompetent widow's guardian, on her behalf, to take under the law of succession, rather than under her deceased husband's will. More specific questions are whether or not she was estopped to make such an election, and, if not, was such election revoked by the conduct of the widow's heir, after her death, or was said heir estopped, by said conduct, to claim the benefit of her intestate's election.

In Tennessee, the testator, W. D. Russell, after having several sons and daughters by a former wife, married Mary, or Mary C., Russell in 1920, and the couple started housekeeping in Jackson County, Oklahoma. No children were born of this marriage.

Years later, in the early part of 1951, Mrs. Russell became incompetent, and, in guardianship proceedings instituted, as Cause No. 2484, in the county court, one of the testator's sons, E. L. Russell, was appointed her guardian, about the time she was placed in a convalescent home in Oklahoma City. At first, she was maintained there out of her own separate funds.

In May, 1953, the testator made a will nominating another son, O. A. Russell, as his executor, and containing a devise of a life estate in one 160-acre farm in Section 24, and in another one in Section 28, all in Township 3 North, Range 20 West of the I. M., in Jackson County, to Mrs. Russell, with the fee, or remainder therein, being devised equally between two of the testator's sons, a daughter, and the children of a deceased daughter by his first marriage. Specifically mentioning Mrs. Russell's condition, and her confinement, the will further provided:

> " * * * In order that my wife may be cared for during her lifetime, I hereby appoint my son, W. T. Russell, as trustee of my wife's estate, and I hereby direct said trustee to collect all the rents and profits from the real estate owned by me at my death * *, and from such moneys to provide for my wife for as long as she may live. Upon the death of my wife * * * I direct said trustee, from trust funds in his hands, to defray all burial expenses and to inter her body in her family's cemetery near Shelbyville, Tennessee. I further direct that said trustee, or someone to be designated by him, to accompany her body to its place of burial, and that said trustee shall pay such expenses out of the trust account. After all debts and expenses have been defrayed by said trustee, I direct that the remainder of the funds in the hands of the trustee be divided among my children * * *."

In September of the same year (1953) the testator died, and the Widow Russell's guardian resigned. During the next month, Cause No. 2680 was instituted in the County Court to probate the testator's will when O. A. Russell applied for letters testamentary. Thereafter, on December 4, 1953, E. L. Russell's resignation, as the widow's guardian, was accepted in Cause No. 2484, supra, and an Altus attorney, W. J. Ivester, was appointed as his successor. The next day, O. A. Russell was appointed executor of the testator's estate in Cause No. 2680.

A little more than a month later, on January 14, 1954, the executor, O. A. Russell, filed in the probate proceedings (Cause No. 2680, supra) a pleading entitled "MOTION TO ADVANCE FUNDS", in which he referred to the provision of the testator's will for Mrs. Russell to have a life estate in the aforesaid Oklahoma property, and further alleged:

> " * * * executor has collected rents and profits from said estate since the death of said deceased and amount sufficient to advance to (Mrs. Russell's guardian) the sum of $600.00, and that * * * (she) is in need of said amount of money for her support and maintenance."

In the order granting said application, the probate court found that the executor should pay Mrs. Russell's guardian the said $600.00 " * * * from the rents and profits from the estate of said deceased * * *".

A few months later, or in May, 1954, Guardian Ivester filed, in Cause No. 2680, supra, an instrument entitled "APPLICATION FOR FAMILY ALLOWANCE" in which he referred to the inventory of the testator's estate, filed therein about three weeks before. After alleging the estate's solvency, and that said inventory reflected its appraised value as $46,158.79, the guardian's said application set forth the expenses of maintaining his ward, the incompetent widow, in the Oklahoma City convalescent home, as $200.00 per month; alleged that she was entitled to receive the sum of $800.00 forthwith from her deceased husband's estate " * * * as and for expenses incurred in maintaining * * * (her) * * * "; and that her said guardian was entitled to receive (on her behalf) the sum of $200.00 per month thereafter " * * * during the administration of said estate for the support and maintenance of said surviving widow * * *". By an "ORDER SETTING APART FAMILY ALLOWANCE", entered the same

day, the probate court granted the described application; and, under the authority of said order, the testator's executor thereafter continued to pay his widow's guardian the sum of $200.00 per month throughout the remainder of her life.

On March 3rd, 1956, more than a year after the above order went into effect, Mrs. Russell's guardian filed a petition in the guardianship proceedings (Cause No. 2484, supra) with a copy of the testator's will attached, pointing out that, by its provisions, his ward would receive, out of said testator's estate, property of less value than would be obtained through succession by law, and praying, among other things, that the court, after a hearing on said petition, authorize petitioner, on her behalf, to elect to take under said law, instead of under the testator's will. When this petition had been heard two weeks later, and on March 17, 1956, the probate court entered an order directing said petitioner " * * * to file, as such guardian, his election to share in * * * " the testator's estate under the law of succession, instead of under the will. Four days later, or on March 21, 1956, Guardian Ivester, by way of complying with said order of the guardianship court, filed in the testator's estate proceedings (Cause No. 2680, supra) an instrument entitled: "ELECTION TO TAKE BY SUCCESSION." It was stipulated that a copy of this "ELECTION * * * " was mailed the next day to Mr. Hughes, attorney for the W. D. Russell Estate's Executor.

Before Mrs. Russell thereafter died intestate on June 10, 1957, without any formal distribution of her deceased husband's estate having been made, her sister and only surviving heir, Alice Doris, wrote W. T. Russell a letter dated August 21, 1956, which reads in part, as follows:

"I had a letter from Mrs. Lee from the Roberts Convalescent Home telin me that the end was near for my Sister Mary C. Russell.

"Your father has lift in his will paragraph (Sixth) what he wanted done in order that his wife Mary G. Russell out lived him and appointed you to be her trustee and you ore some one you are to accompany her body to its place of burial. I want to say here if you come and I hope you do we want you to make our home your place to stay while here or who ever comes.

"I am willing for your father's will to be as he desired. * * *."

Within a few weeks after Mrs. Russell's body was interred, as contemplated in her deceased husband's will, or in August, 1957, her guardianship was formally closed, and Waldo T. Oden, one of the plaintiffs in error herein, was appointed administrator of her estate.

When O. A. Russell, defendant in error herein, thereafter filed, in Cause No. 2680, supra, his formal account and petition for W. D. Russell's estate to be distributed as provided in said testator's will, notwithstanding the aforesaid election, on Mrs. Russell's behalf, to take under the law, be referred to some of the facts hereinbefore mentioned to support his theory that said incompetent widow had, in truth and in fact (at least by implication) taken under the testator's will; and prayed that the instrument entitled "ELECTION TO TAKE BY SUCCESSION" be stricken from the files.

In response to said petition, Alice Doris filed a combination "Objections * * * " to the petition for distribution, and petition for distribution to her, of her deceased sister's "inherited portion" of W. D. Russell's estate. Therein, as the sister and sole heir of Mary C. Russell, deceased, she laid claim to the entire West Half of the testator's Section 28 farm, alleging that it was acquired during the testator's marriage with said sister, and that, by reason thereof, and the intestate sister's aforementioned election to take under the law of succession, the intestate inherited all of it. Alice Doris's "Objections * * * " and petition further alleged that, under the law of succession, the intestate also inherited an undivided one-ninth interest

in the East half of said farm, and all of her deceased husband's personal property; and that by reason of her being Mrs. Russell's sole heir, said petitioner was entitled to all the personal property and cash the executor's petition represented as being in his possession, as well as to the real estate referred to, as aforesaid.

After the filing of further pleadings on behalf of Russell's executor, the administrator of Mrs. Russell's estate, and of Alice Doris, and a trial before the probate court in Cause No. 2680, supra, said court, in August, 1959, entered its judgment upholding the claims of Alice Doris, and the administrator of the intestate sister's estate, specifically finding that the doctrine of estoppel did not apply, and that upon Mrs. Russell's death, said intestate, in accord with her election and the law of succession, inherited the portions of his estate alleged by the administrator of her estate and Alice Doris. After adjudging that, upon Mr. Russell's death, all of his personal property and the West Half of the Section 28 farm passed in proportions of one-half to his heirs, and one-half to Alice Doris, who inherited an undivided one-ninth interest in all the rest of said testator's realty, the court also adjudged, among other things, that the sum of the funeral expenses of Mrs. Russell (which Mr. Russell's Estate had previously paid) was a liability against Mrs. Russell's estate.

Upon an appeal from said judgment to the district court, by the executor of Mrs. Russell's estate, and a trial de novo there, said court entered judgment in favor of said executor, holding that Mrs. Russell should take under Mr. Russell's will, rather than under the law of succession. From said judgment, the administrator of Mrs. Russell's estate and Alice Doris, usually hereinafter referred to as appellants, have perfected the present appeal.

Appellants' position, in substance and effect, is that there was no ground upon which the District Court could validly disregard Mrs. Russell's written election

to take, and they characterize the objections to said election, expressed for the first time in the Final Account and Petition for Distribution filed in the W. D. Russell estate, as a "collateral attack" on the guardianship court's previous order directing said election. They recognize that there are cases in this jurisdiction wherein surviving widows, by the act of accepting partial distribution under their husband's wills, or by other conduct indicating acceptance of said wills' provisions, have been held to have elected to take under them, or to have been estopped to deny that they did; but they argue that Mrs. Russell did nothing that could be so deemed, or held. Under their Proposition II, they also argue that said surviving widow's right to take under the law, rather than under the will, was a "personal" one, and could not be affected, or waived, by Alice Doris's hereinbefore quoted letter, or by the W. D. Russell estate's payment of Mrs. Russell's funeral expenses. They further argue that the sums paid out of the W. D. Russell probate estate into Mrs. Russell's guardianship estate, to defray the expenses of her care and maintenance, constituted a widow's, or family, allowance, to which Mrs. Russell had a statutory right, and which, by statute, was a charge against W. D. Russell's entire estate, regardless of whether his widow took under the will, or under the law of succession, citing Tit. 58 O.S.1951 § 315, and two Oklahoma cases.

O. A. Russell, Executor of the W. D. Russell Estate, hereinbefore referred to as appellee, asserts that said testator's heirs were entitled, before the hearing on Mrs. Russell's guardian's application for authorization to make the election on her behalf, to notice of said hearing; and that the order entered at said hearing was, for that reason, void, as in contravention of "due process." He further argues that the matter of whether Mrs. Russell was to take under the will, or under the law, could not become res judicata at any time before a final decree by the probate court

distributing the estate. To sum up his position, appellee contends that the judgment of the District Court must be affirmed, if either of the following propositions are found to be correct:

(1) "If under the evidence it was for the best interest of the widow to order distribution under the will;

(2) "If the order directing guardian to elect (entered in Mary Russell guardianship) is not res adjudicata;

(3) "If the court, on final hearing, upon notice and hearing, in order to determine proper distribution of the estate had power to review interim orders affecting shares of interested parties;

(4) "If the guardian was estopped to claim under the election; or

(5) "If the order made in the guardianship case, the result of which is to affect the interests of the heirs in this case, was void as to them, as being a denial of due process."

 In view of appellee's recognition that, under Turner v. First Nat'l Bank of Muskogee, Okl., 262 P.2d 897, it is within the guardianship court's original prerogative, and discretion, to decide, on the basis of the facts and circumstances of each case, and, in keeping with her best interests, whether an incompetent widow, who is its ward, should elect to take under her testator husband's will, or under the law of succession, we deem it unnecessary to detail the various arguments he advances to show why Mrs. Russell's election should have been—to take under the will, rather than under the law. In the light of hind-sight, focused on the long delay in the closing of the W. D. Russell estate, while Mrs. Russell received the benefit, through her guardian, of monthly payments from her husband's estate all during a period of approximately two and a half years, it may be true that, when the sum thereof is added to the cost of her funeral (also paid by the husband's estate), she received more in this manner than the value of the *realty* in fee that was hers to claim under the law of succession. It does not follow, however, that such computation demonstrates that it would have been to said widow's advantage to have elected to take under the will. This is for the reason that she was entitled to a "widow's allowance", regardless of whether she elected to take under the will, or under the law of succession; and this is true regardless of whether that name be given to the six-hundred-dollar allowance her guardian received from her husband's estate in January, 1954, or whether said sum be deemed a "partial distribution" (of income from her "willed" share) of said estate. While the parties argue about whether the payments of $200.00 per month, said guardian later began receiving under the probate court's order of May, 1954, was *income from the* life *estate* Mrs. Russell's husband *willed her*, or whether it was widow's, or family, allowance money, we think there can be no question, from the record, but that it was the latter. When the total sum she received under the order is added to the value of the fee interests, and personal property, she was entitled to inherit under the law of succession, it does not appear that it would have been to her monetary advantage to take under the will. In the case of In re Stevens' Estate, 163 Iowa 364, 144 N.W. 644, 646, the court said:

"* * * the usual rule in such cases should be to give to the widow that which would be of the most benefit to her, and we are not sure that the value of her estate after death is not a proper matter for consideration. When the widow herself elects, she generally selects that which would be of most value, and as a rule an estate in fee to a considerable amount of land is of more value than a life estate in all of it. It is quite natural in such a case for a widow, if she has heirs, to take them into account when she makes a voluntary election and, this being true, the court may do the same thing without being charged with an abuse of discretion. No hard

and fast rule should be announced for these cases. * * *"

We therefore cannot agree that, on the basis of monetary considerations, Mrs. Russell's election was not the best choice. Furthermore, assuming, without deciding, that the matter of said intestate's election was not res judicata when her husband's executor filed his final account and petition for distribution, it was neither improper nor invalid. In the situation presented herein, W. D. Russell's other heirs would have been in no position to show any legal or equitable reason for her not being allowed to elect to take under the law of succession, and they had no right to notice of the guardianship court's hearing on the matter. Therefore, the omission of such notice deprived them of no right protected by the constitutional guarantee of "due process."

■■■ In this case, there were not facts sufficient to establish an estoppel, or other valid reason under statutes like Oklahoma's for not giving complete effect to Mrs. Russell's election to take under the law of succession. A principle recognized by most courts is that an estoppel cannot be based upon a widow's acceptance of benefits, to which she was entitled whether she took under her husband's will or not. As said in Hubbard v. Beverly, 197 S.C. 476, 15 S.E.2d 740, 135 A.L.R. 1206, 1209;

"No estoppel can be claimed against a person where such person is charged with accepting benefits to which he is entitled irrespective of the transaction on which the estoppel is asserted."

See also cases cited in the Annotations following the quoted case. As hereinbefore mentioned, Mrs. Russell was entitled to a widow's allowance under our statutes, whether the probate proceedings in Cause No. 2680, supra, concerned property interests devised by will, or those inherited under the law of succession. Her receipt of it can therefore not be used to deny her the statutory share of her deceased husband's estate that she elected to take. See In Re Williams' Estate, Cal., 72 P.

2d 476; Hodgkins v. Ashby, 56 Colo. 553, 139 P. 538, and Grover v. Clover, 69 Colo. 72, 169 P. 578, in which the court said:

"It is settled in this state that a widow's allowance is not the nature of an interest in an estate; it is not something which goes to the widow by descent * * *".

The situation in Oklahoma, as regards a widow's, or family, allowance is similar to that which obtained in California at the time of In re Walkerley, 77 Cal. 642, 20 P. 150, wherein the court said:

"In most of the states of our Union there are statutes conferring upon the probate courts power to provide an allowance for the support of the family for longer or shorter periods. Some of these statutes limit a family allowance to cases of intestacy, or to cases in which no provision is made by will, or, if made, where such provision is waived by the widow. Our statute is not so limited. The conclusion we reach is that under our law the probate court may in its discretion, in all cases where the necessity therefor exists, make for the support of the family a reasonable provision during such reasonable period as, in view of all the facts, may be necessary."

See also the Annotation at 98 A.L.R. 1325. In the case of In re Leger's Estate, 147 Misc. 286, 264 N.Y.S. 452, (discussed in the Annotation at 29 A.L.R.2d 227, 228, 229), as here, the testator's will created a trust for the rents and profits from the testator's estate in order that his widow might be cared for during her lifetime and after his death. While his estate was being administered, the trustee made payments to her at various times, and in various amounts, of a total of $2438.00, that had been collected into the trust. There, as here, the probate court had taken no action on the widow's election to take her intestate share of the estate, until the final settlement of the executor's accounts, at which time the remainderman of the trust opposed the widow's election on the ground that, by receiving the aforesaid payments, the wid-

ow had accepted the provisions of the will and thereby waived her right to claim her intestate share of the estate. There, as here (as far as the record shows) the widow had no independent income for sustenance after the testator's death. There the court said:

"* * * here we are to * * * determine from the facts * * * whether the surviving widow should be compelled for nearly two years to be without income, to suffer want perhaps, in order to obtain her rights of an election as against the provisions of the will. In this matter her election was made in proper form and in time as prescribed by law. *She was not responsible for the law's delay in the probate of the will or for the time taken in the administration of the estate.* * * *

"The executor paid it (her subsistance) from the only funds that it could legally pay from, until a settlement of the estate was had or the determination of the widow's election to take against a will was made. * * *

"It would seem that, if we are to give full force and effect to the present law, and are to liberally construe the provisions thereof in favor of the surviving spouse, we must under these particular facts hold that the widow has the right to her election to take her intestate share, and that the same has not been waived by receiving small sums at various times for her needs * * *." (Emphasis ours).

While we recognize that the present case differs from the above quoted one, in that there, the widow agreed that the money paid for sustenance might, in making distribution, be deducted from her share of the intestate estate, the court's opinion does not appear to have been controlled by consideration of that feature of the case; and it has been followed without reference thereto. (See In Re Tannenbaum's Estate 25 Misc.2d 287, 205 N.Y.S.2d 390, 394).

Here, as there, it was not shown that the Widow Russell was in any manner responsible for the long delay in the filing of the executor's final account and petition for distribution. The executor, O. A. Russell, testified that the reason he left the estate open until Mrs. Russell's death was that "Tom" (apparently referring to W. T. Russell) who was named trustee in the testator's will, never qualified as such. Appellee's brief represents that the estate "* * was held * * * open for the very purpose of seeing to it that the widow was cared for", but there is no unequivocal proof of this in the record, although, at the district court trial, the executor attempted —obviously to support his plea of estoppel—to show he was misled, by testifying as follows:

"Q If you had known that Mary Russell, or her guardian, or the Court, was going to elect to take under the statute of discent and distribution, rather than under the will, would you have closed the estate out immediately?

"A I would have been glad to."

To interpret the executor's rather equivocal remark as a responsive, negative, answer to the quoted leading question, appears inconsistent with his having—for more than a year after his attorney was mailed a copy of Mrs. Russell's election—continued to pay said guardian the two-hundred-dollar allowance each month until her death in June, 1957. Whether Attorney Hughes was ever aware that he received such notice of such election is beside the point. He must be deemed, in law, to have received, and seen it, and to have imparted to his client, the executor, the knowledge, or notice, given by such receipt. In view of the fact that said executor then took no action to discontinue said allowance, around the payment of which he now seeks to formulate the equitable defense of estoppel, it would appear that his present argument constitutes a change of position, or is an afterthought. Regardless of the reason for the executor's delaying any effort to close the administration of the es-

tate until he filed his final account and petition for distribution in April, 1958—more than four years after his appointment—there is no evidence that Mrs. Russell, or her guardian, requested, or was in any way legally responsible for, such delay. That circumstance can therefore not be used to invoke estoppel against her, or her heir, Alice Doris.

■ Alternative arguments appellee presents to support his plea of estoppel, pertain to the time when Mrs. Russell's election was filed, to Alice Doris's hereinbefore quoted letter, and to the payment of Mrs. Russell's funeral expenses. His inference is that the doctrine of laches should be applied against giving effect to the incompetent's election, because it was not filed until approximately thirty months after commencement of her deceased husband's estate proceedings. In the absence of any statute requiring such an election to be made within any certain elapsed period after institution of such proceedings, and, without any more evidence (circumstantial or direct) than there is in this case, that such delay misled the appellee into doing anything detrimental to the estate, or to the interests of the testator's remaindermen devisees therein (that he otherwise would not have done) we cannot hold the doctrine of laches applicable. The general rule, as stated in 57 Am.Jur., "Wills", sec. 1572, is:

> "* * * the right to renounce a testamentary gift must be exercised within a reasonable time after the testator's death or after a reasonable opportunity is afforded the legatee to do so, with the result that if no action is taken by the beneficiary within such period he will be considered, or * * conclusively presumed, to have accepted the gift."

Under the circumstances of this case, we do not think the period that elapsed between the inception of Mrs. Russell's right to renounce her husband's testamentary gift of a life estate, and the date her guardian took steps to exercise that right, should be considered unreasonable, or a proper basis for application of the doctrine of laches against her.

■ Nor was Alice Doris's statement in her hereinbefore quoted letter of August 21, 1956, that: "I am willing for your father's will to be as he desired", sufficient to revoke Mrs. Russell's previous election, or to estop Alice Doris from thereafter succeeding to said intestate's share of the testator's estate. As indicated in appellants' brief, it was never shown that the quoted statement pertained to anything except Mrs. Russell's contemplated funeral and burial expenses, or that Alice Doris ever intended, by it, to waive or prejudice her inheritance right. In view of the weight of authority requiring clear and convincing proof of such a waiver on the part of the widow (see Hahn v. Dunn, 211 Iowa 678, 234 N.W. 247, 82 A.L.R. 1503, 1506, 1507, and the Annotations following it at 1541ff; 57 Am.Jur., "Wills", section 1540) and the authorities holding that oral and/or informal expressions alone are not sufficient for that purpose, we see no reason why Mrs. Doris's letter should be governed by a lesser test. Nor do we think, under the circumstances, the fact that Mrs. Russell's funeral expenses were originally paid by the executor out of the W. D. Russell estate estopped Alice Doris from thereafter claiming her sister's share of said testator's estate. (In this connection, see 57 Am.Jur., "Wills", sec. 1563). The County Court's decree ordered that item deducted from Alice Doris's inheritance; and, on the basis of the arguments presented, and the foregoing authorities, the District Court should have found and held that the election filed in behalf of Mary C. Russell to take under the statutes of descent and distribution was valid and effective; that for said reason she took under said statutes and not W. D. Russell's will. The appealed-from judgment is, as to this finding and holding, reversed. We note that plaintiff in error contends that in the Order of the County Court from which an appeal was perfected, there was a failure to distribute W. D. Russell's estate in accordance with the mentioned statutes. In view of

the fact that the District Court on appeal found and held that Mary C. Russell took under W. D. Russell's will and not under our succession statute, there was no occasion for that court to consider the last mentioned contention. Upon remand of this case to the District Court it is directed that a trial be had at which time this contention shall be considered.

Reversed and remanded with directions to consider and determine the issue of whether the order of the County Court distributing the estate of W. D. Russell complies with applicable statutes.

WILLIAMS, C. J., and HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.