In the Matter of the GUARDIANSHIP OF Chauncey H. SCOTT, an Incompetent Person.

Kenneth J. SCOTT; Lynn B. Scott; Lenora Scott David; Carl C. Scott; and James A. Scott; Next-of-Kin of Chauncey H. Scott; and James A. Scott as Guardian of the Estate of Chauncey H. Scott under appointment by the Court of Common Pleas, Probate Division of the County of Trumbull, State of Ohio, Appellants,

v.

Clarence E. MULLINS, Guardian of the Estate of Chauncey H. Scott; and Shrine Burns Hospital for Children of Galveston, Texas, Appellees.

No. 56903.

Supreme Court of Oklahoma.

Feb. 8, 1983.

Richard N. Steed, Shawnee, for appellants.

Paul McKinney, Shawnee, for appellee, Clarence E. Mullins.

Wm. E. Dougherty, Jr., Shawnee, for appellee, Shrine Burns Hosp. for Children, Galveston, Texas.

HARGRAVE, Justice.

This action is appealed from the District Court of Pottawatomie County, State of Oklahoma, and is brought by Kenneth J. Scott, Lynn B. Scott, Lenora Scott David, Carl C. Scott and James A. Scott, as next of kin and guardian of the estate of Chauncey H. Scott as appointed by the Court of Common Pleas, Probate Division of the County of Trumbull, State of Ohio, referred to as appellants hereafter. The interlocutory order appealed from arises from the following facts.

Chauncey H. Scott and Adelaide M. Scott were husband and wife and they were long

time residents of Pottawatomie County. In 1967, the couple executed two wills after placing many of their assets into an *inter vivos* trust naming as trustee a bank in Oklahoma City. That trust was later revoked and the husband and wife consulted their Shawnee, Oklahoma attorney in reference to amending their testamentary plan so as to accord with changing circumstances and desires. After a lengthy series of conferences (29), the wife, Adelaide, executed a last will and testament on August 1, 1973. This instrument provided for specific bequests to the husband, Chauncey, and nominal bequests to nieces and nephews, in addition to specific bequests to two universities and a school for mentally retarded children. The remainder of her estate was placed into two trusts for the benefit of the husband, Chauncey. These trusts were the Chauncey H. Scott Marital Deduction Trust equal to the maximum estate tax marital deduction, and the second was a residuary trust. The will also provided for the distribution of the residue of the trusts on the death of the husband, which allowed a maximum of $33,000 to be distributed to the nieces and nephews (appellants herein) and the balance and the remainder to be distributed to the Shriners' Burn Hospital for Children in Galveston, Texas. Two codicils thereafter executed changed co-executors and co-trustees and eliminated the specific bequests to the universities and the school for the mentally retarded. The will also provided that the trustee had the discretion and power to allocate any and all principal and income of the trusts to the husband during his lifetime. Early in 1977, Chauncey and Adelaide filed petitions of conservatorship which requested appointment of Mr. Mullins as their conservator. At the date of her death, September 1, 1977, there was no issue of the marriage and the wife had no children of other marriages. Fifteen days after the death of the wife and thirteen days before the court declared Chauncey incompetent, a will was executed by Chauncey. Soon after, the surviving husband was allowed by the court to take a trip to Ohio to visit his prior home state, and James A. Scott then applied for Letters of Guardianship in Ohio. This was after the courts of Oklahoma had acquired jurisdiction of the person and estate of Chauncey H. Scott in the guardianship. Later, James A. Scott and Carl Scott attempted to terminate the Oklahoma guardianship. The District Court of Pottawatomie County dismissed the petition, appeal was prosecuted from that order, and the Court of Appeals, Division I, held in an unpublished opinion (# 52,340), that the District Court had not erred in ruling the appellants had attempted to seek equitable relief while coming into court with unclean hands, in that these parties had refused a court order to return the ward to the jurisdiction of the court, as shown by the fact a contempt citation resting on that conduct was pending.

The appeal considered here arises from an order of the District Court entered pursuant to an application for an order for instructions filed by the Oklahoma guardian of Chauncey H. Scott, an incompetent person, as to whether the guardian should elect to take his intestate share of his deceased wife's estate or elect to take under her will.

The trial court directed the guardian to take under the will after hearing testimony of witnesses and examining various exhibits, and this order is now appealed from.

Although the portions of the record designated on this appeal are limited to the testimony at the last mentioned hearing and the application for instructions, objection thereto, and resultant order, it appears from the testimony that Chauncey and Adelaide Scott were both possessed of a substantial estate in their own right of an amount sufficient to care for each during this life.

The first proposition of error raised by the appellants is that the trial court erred in directing the guardian to take under the will instead of under the laws of intestate succession because that direction is contrary to the presumption that the spouse takes under the laws of intestate succession. Three cases are cited in support of this point, *Fox v. Fox,* 117 Okl. 46, 245 P. 641 (1926); *Bank of Commerce & Trust Co. v. Trigg,* 138 Okl. 216, 280 P. 563 (1926), and

*Tucker v. Zachary, et al.,* 269 P.2d 773 (Okl. 1954). The earliest of these cases, *Fox v. Fox,* deals not with a matter of presumption but with the nature of the acts sufficient to constitute an implied election on the part of a forced heir. *Bank of Commerce & Trust Co. v. Trigg, supra,* deals with the separate and distinct question of what effect death of a forced heir has on the question of taking under the will or as a forced heir. The right to elect between the two is held in *Trigg* to be personal and does not pass to the heirs on the death of the party failing to elect. In this connection, see *Stinson v. Sherman,* 405 P.2d 172 (Okl. 1965); *Tucker v. Zachary, et al.,* 269 P.2d 773 (Okl.1954), cites *Porter v. Hansen,* 190 Okl. 429, 124 P.2d 391, for the proposition that a will that leaves a forced heir less than that heir would receive by inheritance is not void but is merely voidable, holding the petition in the cause did not plead a contract to make a void will. None of the three cited cases establish a presumption as urged by appellants. The first discusses the nature of acts sufficient to constitute an election, and the remaining two of three cases cited by appellants deal with an heir that died prior to making an election. The issue at hand relates to the election of an heir still living, although declared incompetent, and the correctness of the determination made by the court that an election should be made to take under the will during his lifetime. The Guardian of the incompetent has care and custody of the person of his ward, and the management of *all* his estate until his discharge. 58 O.S. 1981 § 853. The election of the guardian relative to the forced heir issue is to be made in the court having jurisdiction of the estate of the incompetent. *Turner v. First Nat. Bank & Trust Co. of Muskogee,* 262 P.2d 897 (Okl.1953).

Prior cases from this jurisdiction have outlined the considerations which guide the court and guardian in determining whether to elect for the ward to take under the will or under the laws of intestate succession. *Turner v. First National Bank & Trust Co. of Muskogee, supra,* at p. 901 contains a set of guiding precepts for the court to be

mindful of in making an election in the best interests of an incompetent spouse, which are quoted from *First National Bank v. MacDonald,* 100 Fla. 675, 130 So. 596, at 598. Summarized, these are as follows: First. A spouse's right to dispose of his estate is limited by the right of the surviving spouse to renounce the provisions of a will, but the sole reason in law for giving the widow the right to renounce is to insure ample provision for the survivor's needs and comforts. Second. These personal needs and comforts may not be confined to pure monetary considerations. Third. The matter of enriching the spouse's estate, thereby passing property to the survivor's estate thus enriching the survivor's kinspeople has little place in the consideration. Fourth. The kinspeople of the survivor have no direct or indirect claim on the estate of the decedent. Fifth. The court may consider the fact that the survivor is incompetent and cannot use money with discretion and thus has no need for property save to furnish the comforts and needs of life. Sixth. It is proper to notice that when the spouse has made ample provision for the incompetent, he has an inherent right to dispose of his property as he pleases.

Appellants contend, contra to the language in *Turner, supra,* that the disparity between the value of the shares dictates the guardian should elect the alternative procuring the larger share for the ward. The *Turner* case also speaks to the effect of differing monetary benefits accruing to the incompetent ward by virtue of the guardian's election between the intestate share and that provided in the will. If the court must elect for the incompetent survivor solely upon the basis of which choice renders the greater material value, the matter would merely be a question of mathematics—a task for appraisers and accountants. The word election, however, means the right and power to choose without restriction, and such a rule would destroy the freedom of election.

A review of the record reveals the following facts are material to the choice to be made by the guardian.

The survivor is a declared incompetent of 87 years of age. He has little need for an estate of a sizeable nature by virtue of his disability which leaves him frequently assuming he has returned to the period of his first World War service. Therefore, as in *Turner, supra,* it can be fairly said he primarily requires only the funds necessary for his care and daily comforts. Upon the event of an election to take under the will, the spouse would have the total value of the decedent's estate, (approximately $500,000) principal and interest available for the defrayment of these living expenses at the order of decedent's trustee, the same person as the guardian of the estate of the surviving spouse. The surviving spouse is possessed of an estate in his own right in the neighborhood of $100,000. Both husband and wife had settled upon a common plan to leave the balance of their estate upon their demise to charity, for the reason that their relatives had received substantial aid in the past and to their mind, charities needed funds more than relatives.

There is evidence in the record that points to the fact that the now surviving husband transferred a substantial portion of his estate to his wife at a period of time in which he was seriously ill. Such act shows that the husband was, at one period, willing to allow the now deceased spouse to exercise her independent control over those funds, just as she ultimately did. Such fact bears out the statement found in *Turner, supra,* 262 P.2d at 903, 904, quoting with approval *In re Harris' Estate,* 351 Pa. 368, 41 A.2d 715, to the effect that not every surviving spouse disregards the deceased spouse's wishes for the disposition of property simply on the basis of obtaining a greater quantum of his estate; sentiment enters the consideration as well as material advantage. If the needs of the survivor are otherwise adequately satisfied, it does not necessarily follow that the survivor will elect the choice of the larger estate.

The testimony bearing upon the facts surrounding the later will in which Mr. Scott left all his estate to appellants, his heirs, show Mr. Scott was declared incompetent shortly after the later will was exe-cuted; the testimony states explicitly that the surviving spouse did not know the extent of his estate or the objects of his testamentary bounty at the time of the execution of the last will; preliminary arrangements for the execution of this will were made by the beneficiaries thereof. Under these circumstances it cannot be said that the trial court erred in refusing to attach overriding significance to the plan set out in that instrument.

It is thus our conclusion that the order of the trial court is in accord with the law and the weight of the evidence, and it is accordingly affirmed.

AFFIRMED.

BARNES, C.J., and IRWIN, HODGES, LAVENDER and WILSON, JJ., concur.

SIMMS, V.C.J., concurs in result.

DOOLIN and OPALA, JJ., dissent.