### 4668. ANDERSON v. ANDERSON.

1. Where a widowed mother had a cause of action against a railway company to recover damages for the homicide of her son, and she entered into a contract with her children, by the terms of which she agreed, in consideration of advances, made by them to her for the purpose of defraying the expenses of prosecuting her cause of action, to share equally with them in any recovery she might obtain in her suit, this was not an assignment of the right of action for the personal tort.

2. The contract made by the children with the mother as indicated in the foregoing headnote is not one of maintenance or champerty. Maintaining the suit of another is lawful if the person so maintaining has any interest in the subject-matter of the suit, however remote, vested, or contingent, or is connected with the suitor by some social relation, or by the ties of affinity or consanguinity, or is under any obligation to assist and aid the suitor.

DECIDED MAY 20, 1913.

Certiorari; from Whitfield superior court—Judge Fite. January 8, 1913.

*M. C. Tarver,* for plaintiff.  *C. N. King,* for defendant.

HILL, C. J.  This was a suit in a justice's court by a son against his mother, to recover, under a written contract, the sum of $90.88, this sum being a ninth interest in $818 which she had recovered as damages for the homicide of another son.  The facts are as follows:  Myra Anderson, the defendant, had a son, Noble Anderson, killed by a railway company in the State of Texas.  She had a cause of action for her son's death.  She had no money to prosecute the cause of action or to pay the necessary expenses of the litigation.  Her nine children, among whom was the plaintiff, made an agreement with her that they would advance the money to her to prosecute her cause of action against the railway company in Texas and to defray the expenses of one of her sons in going to Texas to look after the suit, provided they should share equally with the mother in the recovery.  She assented to this agreement.  The money was advanced by the children, the son went to Texas, suit was instituted, and recovery had, and the present suit was brought to recover this son's agreed proportion of the amount of the recovery.  The justice of the peace sustained a general demurrer and dismissed the suit.  The plaintiff took the case, by certiorari, to the superior court; his certiorari was sustained, and the writ of error challenges the correctness of the judgment sustaining the certiorari.  Two questions are raised by the record.

1.  It is contended that the contract in question was an effort to make an assignment of an interest in a right of action for a personal tort, and that, under the code, a right of action for a personal tort is not assignable.  Civil Code (1910), § 3655; *Central R. Co.* v. *B. & W. R. Co.,* 87 *Ga.* 386, 388 (13 S. E. 520).  Under the facts of this case we do not think that there was any assignment of the right of action to the children by the mother for the personal tort arising from the homicide of her son, but it was simply a contract between the mother and her children by which they agreed to advance to her the necessary means to carry on the litigation in her own name and behalf for the death of her son, and to pay the expenses of one of her sons for the purpose of aiding her in the prosecution of her suit.  The suit for the tort was prose-

cuted in Texas in the mother's name, and not in the name of her children.

2. The second question raised is whether the contract between the mother and her children was one of maintenance or champerty, and therefore void as against public policy. Section 4253 of the Civil Code is relied upon in support of this contention. This section is as follows: "A contract which is against the policy of the law can not be enforced; such are contracts tending to corrupt legislation or the judiciary, contracts in general in restraint of trade, contracts to evade or oppose the revenue laws of another country, wagering contracts, contracts of maintenance or champerty." Was the contract in question one of maintenance or champerty? There are two essential elements in a champertous agreement. First, there must be an undertaking by one person to defray the expenses of the whole or a part of another's suit; and, second, an engagement or promise on the part of the latter to divide with the former the proceeds of the litigation in the event it proves successful. The Supreme Court of this State has frequently held that a contract of this character was champertous and could not be enforced. *Moses* v. *Bagley,* 55 *Ga.* 283; *Meeks* v. *Dewberry,* 57 *Ga.* 263; *Johnson* v. *Hilton,* 96 *Ga.* 577 (23 S. E. 841). Champerty, maintenance, and barratry were defined and denounced as kindred offenses very early in the history of English law. 4 Black. Com. 135. Many States of this Union have statutes against such practices, as highly injurious to the peace of society and as offenses which interfere with the course of public justice. Blackstone, in his Commentaries, speaks of the offense of champerty as one which "perverts the process of law into an engine of oppression." It is, however, a well-defined exception to the law against maintenance or champerty that where one has a peculiar interest in a suit, or is related by the ties of consanguinity or affinity to either of the parties, he may rightfully assist in the prosecution or defense of such suit, either by furnishing counsel or contributing to the expenses, and may, in order to strengthen his position, purchase the interest of another party, in addition to his own; and that agreements of this character and under these circumstances are valid. See notes appended to the case of Thallheimer *v.* Brinckerhoff, 15 Am. Dec. 308, 319. In that case it was held by the Court of Appeals of New York that maintaining the suit of another is law-

ful, if the person so maintaining has an interest in the suit, vested or contingent, or is connected with the suitor in some social relation, or by the ties of affinity or consanguinity, or in the relation of landlord and tenant, master and servant, or attorney and client, or is moved by the impulse of charity; and a contract between an heir and his brother-in-law, by which the latter promised to incur a half of the expenses in an action which was about to be brought, in consideration of a fourth of the property to be recovered, was held to be valid; and it was held that if the suit were brought and compromised, and the property conveyed by the heir, the brother-in-law might, in an action of indebitatus assumpsit for money had and received, recover his share of the proceeds. See, also, Small *v.* Mott, 22 Wend. 403. From these decisions the rule is deducible that a champertous agreement is one made by a stranger to the subject of the litigation, who has no interest therein in law or in equity, or any expectancy by the ties of blood or affinity, or who is under no filial or social obligation to assist or aid in the subject-matter of the litigation, but who agrees to assist either from a pecuniary motive solely, or for the purpose of embroiling his neighbors in litigation, or to carry the suit through the different courts upon a stipulation that he shall receive a share of the fruits of the litigation as a reward for his assistance; and this character of contracts can not be enforced, because they are against public policy.

In the present case the mother had a right of action for the death of her son. She was unable to prosecute her action. It was the duty of her children to assist her in that prosecution and in recovering compensation to which she was entitled for the death of her son. This duty was upon the children not only on account of the relationship which existed, but because there was really a common interest (although it may have been contingent to a large extent) of expectancy in the cause of action. 'Any interest in the cause of action, however remote, would free the contract from the taint of being champertous; and these children had an interest in whatever might be recovered by the mother, although that interest was one of expectancy, arising from the fact of a possible contingency of inheritance. The reason why champerty is denounced by the law is that a contract of that character is against public policy. It certainly can not be against public policy for the children of an indigent mother to aid her in the prosecution of her just

rights under the law. Nor is such contract rendered champertous because, as a part of the agreement which the children made with the mother, in the event of a recovery she was to divide the proceeds equally with them. While it might have been their filial duty to make the advances to the mother without any compensation, yet the mother had the right to reimburse them for such advances and assistance, by agreeing to share with them equally in any recovery which she might obtain; and the children had the right to make with the mother a contract that they were to be reimbursed for the money which they had advanced. For these reasons we think the contract made by the children with the mother was in no sense a contract of maintenance or champerty. It was for a valid consideration and enforceable, and therefore the judge of the superior court did not err in sustaining the certiorari.    *Judgment affirmed.*