## 30159. PAUL v. PAUL.

HILL, Justice.

This is an appeal by the plaintiff Marion Standley Paul from an order finding the defendant former husband not in contempt of the court's order of January 26, 1968, which granted the parties a divorce and incorporated a property settlement agreement. At issue here is a paragraph of the agreement which would escalate the child support or alimony payments if the husband's "net income after taxes" rose above a certain figure.

The property settlement agreement was written by the attorney for the wife as a result of negotiations with the husband, an attorney, and was approved by the court. The agreement provides for periodic payments of fixed amounts for the support of the minor children, and then to

the wife as long as she remains unmarried. The agreement contains a general release by the wife. In paragraph 4 of the agreement a method for adjusting child support or alimony is set forth. It provides: "That the amounts which [husband] is obligated to pay under the terms of this Agreement are predicated upon his income for the year Nineteen Sixty-Six (1966), during which year he received a net income (after taxes) of Twenty Thousand ($20,000) dollars. That, accordingly, after, and only after, [husband] thereafter, if ever, receives a net increase of income of more than Two Thousand ($2,000.00) dollars, i. e. after [husband] receives, if ever, an annual net income (after taxes) of more than Twenty Two Thousand ($22,000.00) dollars, [husband] shall, in addition to all other payments required of him hereunder, pay to [wife] Fifteen (15%) per cent of such net increase above Twenty Two Thousand ($22,000.00) dollars for the support of said children if [husband] is then still obligated hereunder for their support or for the support of [wife]. . . ." The agreement goes on to provide that the husband shall furnish to wife a copy of his federal income tax return each year, and his books and records so that she may determine his "net income." Although his adjusted gross income in 1972 exceeded $45,000, to date the husband has not made any payments under paragraph 4.

For the years 1968, 1969, and 1970, the husband furnished wife a statement prepared by his accountant showing his "net income after taxes" by determining his adjusted gross income and computing and deducting his taxes as if he were a single taxpayer with dependents. Those summary statements show that husband's "net income after taxes" did not exceed $22,000. In fact, the husband had remarried and his and his new wife's total federal and state income taxes were less than those taxes reflected on the summaries.

After the former wife obtained copies of husband's tax returns, she filed a citation for contempt alleging that $4,034.33 was due her as of the end of 1972 under the formula of paragraph 4. After hearing evidence, the court below entered an order finding that paragraph 4 of the agreement was too vague and indefinite to form a basis for holding the husband in contempt. The court also found

that the term "net income" when applied to an individual has no definition or accurate meaning other than "taxable income" and that defendant's "taxable income" never exceeded $22,000 for the years in question.

The plaintiff wife appeals arguing, in essence, that paragraph 4 of the agreement is not vague and indefinite and that the defendant's "net income after taxes" exceeded $22,000 in the years 1968, 1969, 1970, 1971 and 1972. Appellee husband urges us not to review the agreement but to review the action of the trial court to determine whether its interpretation of the agreement constituted abuse of discretion. Although the trial judge is vested with broad discretionary power when the evidence on the issue of contempt is conflicting (*Yancey v. Mills,* 210 Ga. 684 (82 SE2d 505) (1954)), the interpretation of a written agreement is a question of law for the court, as opposed to a resolution of conflicts in the evidence.

Code § 20-702 provides: "The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." If the intention of the parties as of the time of executing the agreement be clear, it should be enforced, even though the parties disagree as to its meaning as of the time of the litigation.

In *Brooke v. Phillips Petroleum Co.,* 113 Ga. App. 742 (149 SE2d 511) (1966), Judge (now Justice) Jordan stated the following rules of law regarding Code § 20-702, supra: "Every other rule is subservient to this one. The fundamental rule, the rule which swallows up almost all others in construing a paper, is to give it that meaning which will best carry into effect the intent of the parties. This is the object of the rules of interpretation, to discover the true intent of the parties, and in doing this we are to take the whole of [the instrument] together, and to consider this with the surrounding circumstances. In ascertaining the intent, that construction will be favored which gives meaning and effect to all of the terms of the contract over that which nullifies and renders meaningless a part of the language therein contained, and in cases of doubt, the contract will be construed most

strongly against the one who prepared the instrument." (Citations and quotations omitted.)

In this case the intent of the parties with respect to paragraph 4 of the agreement was to provide a means of automatically increasing the child support payments by the husband if his net income after taxes increased to a certain point. Since the overall purpose of the parties is clear, the next question is whether or not the words they used in paragraph 4 were clear as to what they meant to be included within the term "net income after taxes." "Net income" as applied to an individual has no definite meaning within the Internal Revenue Code. However, we are seeking here to determine the intention of these parties and the meaning they placed upon the words used in the agreement. If both parties meant something clear and definite by the phrase "net income after taxes," then the fact that the term "net income" has no definite meaning within the context of the Internal Revenue Code is of no consequence.

Paragraph 4 states that in 1966 the husband received net income after taxes of $20,000. Thus at the time they entered into the agreement, the parties knew specifically what was meant by "net income after taxes." In 1966, the husband's adjusted gross income (gross income less business expenses) as shown on his 1966 U. S. income tax return was $23,322, on which $3,515 in taxes was due.

The wife contends that the phrase "net income after taxes" as used in the agreement means adjusted gross income less taxes, and that in paragraph 4 this figure was rounded out to $20,000. (The wife concedes however that the phrase "after taxes" would include state income taxes as well as federal.)

The husband contends that "net income after taxes" means taxable income (to wit: adjusted gross income less deductions and exemptions) less taxes. The husband points out that in 1966, the year given in the agreement as an example, his adjusted gross income was $23,322 and his federal and state income taxes were $4,185, so that in 1966, using the wife's argument his net income after taxes was not $20,000 as stated in the agreement but was $19,137.

However, using the husband's argument (taxable income, less taxes), his 1966 taxable income, less taxes, would have been $12,724, as opposed to the $20,000 figure stated in the agreement.

The husband argues that the formula is too vague and indefinite to be enforceable. He overlooks the fact, however, that his accountant computed his net income after taxes for three years (1968 through 1970) by deducting a tax computation (single taxpayer with dependents) from his adjusted gross income. His accountant did not use taxable income, as he now contends was the intention of the parties.

It is clear from these documents which the husband submitted to comply with paragraph 4 that at least from the time the agreement was signed and until the date he mailed the 1970 computation, his understanding of the meaning of "net income" was the same as that of the wife, to wit: adjusted gross income. We find that the intent of the parties at the time they entered the agreement was clear, contravenes no rule of law, and should be enforced according to its terms, irrespective of the absence of technical tax law definitions.

The wife contends that the amount of taxes to be subtracted in order to arrive at a figure for net income after taxes should be the actual taxes paid by the husband on his income, rather than a tax computation based upon the tax he would have paid if he had remained single. The husband argues that at the time the agreement was signed the parties knew that he would be single since his marriage was ended and that therefore they intended for his taxes to be calculated as a single taxpayer. He contends that even though in fact he remarried and filed and paid taxes as a married taxpayer, for purposes of the calculation of paragraph 4 his taxes should be figured on the basis of a single taxpayer. Again we must disagree. The purpose of putting paragraph 4 into the agreement in 1966 was to provide additional monies for the minor children if the husband's spendable income rose above $22,000. In order to determine his spendable income it would make no sense to subtract a fictitious amount of taxes from net income. The only thing the parties could have intended by the phrase "after taxes" was actual

taxes paid. The agreement does not even suggest that the phrase "after taxes" means something other than taxes actually paid.

We remand to the trial court for determination of the amount due.

*Judgment reversed. All the Justices concur.*

SUBMITTED JULY 22, 1975 — DECIDED OCTOBER 21, 1975.

*William H. Cooper, Jr.,* for appellant.
*Jack Paller,* for appellee.