HAMILTON v. WELSH
2023 OK 103
Case Number: 119694
Decided: 10/24/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 103, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

IN THE MATTER OF THE ESTATE OF KATHA MAE WILLIAMS,

KIMBERLY HAMILTON, as Personal Representative of the ESTATE OF KATHA MAE WILLIAMS and as Trustee of THE WILLIAMS FAMILY TRUST DATED THE 28TH DAY OF MAY 2014, Petitioner/Appellee/Respondent,
v.
CATHERINE Z. WELSH, as Personal Representative of the ESTATE OF EARL WILLIAMS, JR., Respondent/Appellant/Petitioner.

CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION III
HONORABLE KURT G. GLASSCO, TRIAL JUDGE

¶0 The parents of Elliott Williams created their individual wills and joint trust after Elliott died. A wrongful death lawsuit was filed on Elliott's behalf, and the Williamses were statutory beneficiaries to proceeds from the lawsuit. Before they received any such proceeds, they attempted to transfer them into their trust for estate planning purposes. Both parents subsequently died before the proceeds were determined or distributed. The petitioner, the personal representative of Elliott's mother's estate, then sought to have Elliott's mother's share judicially determined to belong in the trust. The trial court determined they belonged in the trust. The personal representative of the father's estate appealed, and the Court of Civil Appeals affirmed. We hold that the proceeds from a wrongful death lawsuit can be transferred into a trust before they are obtained by the trust settlor, and if they are, they belong in the trust.

COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT AFFIRMED.

Catherine Z. Welsh, Jim C. McGough, Tulsa, Oklahoma, for Respondent/Appellant/Petitioner.

George M. Miles, Maureen M. Johnson, Tulsa, Oklahoma, for Petitioner/Appellee/Respondent.

KAUGER, J.:

¶1 The first impression question presented is whether proceeds from a wrongful death cause can be transferred into a trust before they are obtained by the trust settlor. We hold that they can, and if they are, they belong in the trust.

FACTS/PROCEDURAL HISTORY

¶2 This cause concerns a lengthy, convoluted court battle over the estate of Katha Williams (Katha/wife) and the distribution of her interest of $1,178,157.44 from a wrongful death lawsuit involving her son, Elliott Williams (Elliott). However, the facts leading up to this controversy are also interconnected with her husband Earl Williams's (Earl/husband, collectively the Williamses) probate, and the family's trust, and their son Elliott's probate and wrongful death lawsuit.

¶3 The probates have not been consolidated, but some factual information about the interconnections is helpful to set forth the facts, timeline, and procedural history of this cause. To this degree, we take judicial notice of those proceedings.

¶4 The Williamses' son, Elliott, died on October 27, 2011, after being arrested by Owasso police for causing a disturbance. Once in jail, he became paralyzed from injuring his neck and died without receiving any mental health or medical treatment.84 O.S. 2021 §213

¶5 On May 28, 2014, the Williamses, established the Williams Family Trust together, and executed individual wills. Their wills, in identical provisions, left each of their estates to the Williams Living Trust.

¶6 Katha Willaims died on July 24, 2014. On March 22, 2017, final judgment was entered in Elliott's wrongful death lawsuit in accordance with a jury verdict. The jury awarded $10 million in compensatory damages and $250,000.00 in punitive damages. Post judgment motions were all denied by March 31, 2018, and the defendants appealed to the Tenth Circuit Court of Appeals.

¶7 On March 23, 2017, the Williamses' daughter, Kimberly A. Hamilton (Hamilton) filed Katha's probate as personal representative in the District Court of Tulsa County Oklahoma (PB-2017-231), with a copy of Katha's will attached.

¶8 The record is unclear, but it appears that at some point in 2017, Katha's husband, Earl Williams, was placed under a guardianship in the Tulsa County District Court (PG-2017-141).

¶9 The last docket entry for Elliottt's probate is an order dated and filed June 30, 2020, in which it appears the trial court approved a new administrator, identified Elliott's wife and parents as his only heirs, and approved payment of attorney fees. It also identified the judgment of the wrongful death action to be the sole asset of Elliott's estate.

¶10 On May 11, 2020, the trial court admitted Earl's will to probate, and appointed the petitioner/appellant, an attorney, Catherine Z. Welsh (Welsh) as administrator of his estate. No explanation is given as to why Welsh replaced Earl's daughter, Hamilton as administrator. On August 6, 2020, Welsh, in Katha's probate, filed a Certificate to Make Election by Surviving Spouse on behalf of Earl. This filing was an apparent attempt for the deceased husband's election against his wife's will, even though, 84 O.S. 2021 §44

¶11 On March 18, 2021, Hamilton, as trustee of the Williams Family Trust, filed a motion, seeking a determination that the proceeds of Elliott's wrongful death case were property of the Trust, rather than Katha Williams's probate estate.

EARL WILLIAMS and KATHA M. WILLIAMS do hereby transfer and assign, without consideration and in order to change formal title only, all right, title and interest which they now have in those Judgments listed below, to EARL WILLIAMS and/or KATHA M. WILLIAMS, Trustees, or their successors in trust, under the WILLIAMS LIVING TRUST, dated May 28, 2014, and any amendments thereto:

 

 
 
 
 Case Number
 
 
 Court
 
 
 Judgment Amount
 
 
 Judgment Debtor
 
 
 
 
 11-CV-720-JED-PJC
 
 
 Tulsa, OK
 
 
 Pending
 
 
 Stanley Glanz, Tulsa County Sheriff, and City of Owasso Police Dept.
 
 
 
 
 201300019896
 
 
 Montgomery, AL
 
 
 Pending
 
 
 Talcum powder litigation
 
 
 

 

Through Goldwater Law
Firm

This assignment was executed on May 28, 2014.

¶12 The trial court held a hearing on the issue on June 14, 2021. On June 30, 2021, the trial court filed an order in which it determined that the proceeds were not property of the probate estate. The trial court allocated proceeds in the amount of $1,178,057.44 be distributed to the Williams Family Trust.

¶13 On July 6, 2021, Welsh filed an Application to Assume Original Jurisdiction and Petition for Writ of Mandamus in this Court. She sought this Court's review of the trial court's ruling. The respondent replied that Welsh was trying to circumvent the proper appeals process by requesting a writ. We agreed, and on September 13, 2021, the Court directed Welsh to file an amended petition in error within twenty days.

¶14 On October 4, 2021, Welsh filed the Court-directed amended petition in error, appealing the trial court's June 30, 2021, order. The response to the petition in error contends that the appeal is immaterial because the entirety of Katha's probate estate goes into the Williams' Family Trust pursuant to her will.

¶15 On March 2, 2022, we assigned the cause to the Court of Civil Appeals. On May 20, 2022, the Court of Civil Appeals, Division III, in an unpublished opinion, affirmed the trial court. Welsh filed a Petition for Writ of Certiorari on June 9, 2022. We granted certiorari on February 7, 2023.

PROCEEDS FROM A WRONGFUL DEATH CAUSE CAN BE 
TRANSFERRED INTO A TRUST BEFORE THEY ARE OBTAINED BY
THE TRUST SETTLOR, AND IF THEY ARE, THEY BELONG IN THE 
TRUST.

¶16 The petitioner argues that because a wrongful death claim is a tort, it is not assignable to another person, and any proceeds from a wrongful death lawsuit or settlement must also be unassignable. The respondent argues that such proceeds may be transferred and, if they are, they belong in the trust. They are not a part of the probate estate.

¶17 The Williamses transferred their expected interest in any proceeds of the wrongful death lawsuit to their trust. Consequently, the term "transfer" is more apropos to what the Williamses were trying to accomplish, rather than an "assignment" to another person.

A.

A Wrongful Death Claim and Its Proceeds.

¶18 Because wrongful death actions were unknown at common law, any right to bring an action is granted by virtue of statute.Whipple v. Phillips and Sons Trucking, LLC., 2020 OK 75474 P.3d 339

¶19 We also determined because the cause of action for wrongful death is purely statutory, suit may only be brought by a person expressly authorized by statute to do so. Under the applicable statute, if no personal representative had been appointed, the action may be brought by a surviving spouse or in their absence, next of kin. Implicit in this rationale is that the right to bring the cause of action for wrongful death cannot be either assigned or transferred.

¶20 Furthermore, 12 O.S. 2021 §2017

B.

Prior Wrongful Death Cases

¶21 Although this Court has decided many cases concerning wrongful death actions, two in particular stand out for their discussion of the nature of the action, and its expected proceeds. In City of Shawnee v. Cheek, 1913 OK 739137 P. 724

¶22 The Court explained that when a wrongful death occurs, the nature of a wrongful death action is similar to the nature of property, and it is a right created or granted by statute. As such, when the father died, it did not extinguish his statutory right to bring a wrongful death action. The action was properly revived by the administratrix of the father's estate. The Court quoted a New York case which explained that the Legislature has chosen to regard wrongful death as a pecuniary right, a right having the essential attributes of property, so that when it is taken away, compensation is due.

¶23 The Court also relied on a New Jersey case which stated that the death of the beneficiary of a wrongful death suit (i.e., the father) cannot be made to abrogate the liability of the wrongdoer because the pecuniary injury was already sustained. The right to compensation vested in the father immediately upon the death of the child. Recovery is not precluded just because the wrongful death statute does not provide for what happens if he died before the wrongful death action was finally determined. However, the injury sustained would be limited to the duration and extent of the father's lifetime.

¶24 As we previously stated, wrongful death actions are strictly governed by the statutes creating and governing them. As such, the statutory beneficiary may not have the ability to assign or transfer a wrongful death cause of action to another person. Nevertheless, such actions are similar to a property right, already vested in the beneficiaries upon the wrongful death.

¶25 Under the rationale of Cheek, Katha's rights as a statutory beneficiary of her son's wrongful death action vested on the death of her son. Such a right was the equivalent of a property right belonging to her. She never transferred, or attempted to transfer, her right. Consequently she did not violate the statutory prohibition relating to the assignment of claims not arising out of contracts.

¶26 In Aetna Casualty & Surety Co. v. Young, 1924 OK 394231 P. 261

¶27 Under the rationale of Young, the proceeds from the wrongful death action were akin to trust funds held for statutory beneficiaries such as Katha, for her benefit. 25A C.J.S. Death §118, (August 2023 Update) provides:

The trust under which the personal representative or other statutory wrongful death plaintiff holds the damages recovered in a wrongful death action may be enforced by the beneficiaries. A beneficiary may recover a share by an action against the personal representative, or other statutory trustee of the recovery, and as such proceedings, as trust proceedings, are not subject to a bar of time limitations. However, a beneficiary cannot maintain such an action until the net amount for distribution and the respective shares of the beneficiaries have been determined.

The wrongful death statute gives survivors a beneficial interest in the recovery,

C.

Trusts

¶28 A trust, in relation to realty or personalty, may be created for any purpose for which a contract may be made.inter vivos and/or by will.

¶29 In other words, the Williamses employed a common estate planning device of creating a revocable inter vivos trust, and simultaneously executing pour over wills to provide for their heirs at the time of their death.

¶30 Although there are conflicting cases, the weight of authority is that such transfers are valid.

¶31 The Utah Supreme Court in, In re Behm's Estate v. Gee, 213 P.2d 657 (Utah 1950), succinctly explains why proceeds for a wrongful death lawsuit are assignable. It said in pertinent part:

. . . We conclude that respondent's portion of the death claim is assignable. Respondent's contention is that such a holding would overrule those cases in which this court had held that a cause of action for wrongful death is non-assignable. Had respondent attempted to assign a cause of action for death then the cases cited would have been controlling. However, appellant assigned not the cause of action, but rather, assigned any interest he might have in the recovery. While at first blush this may appear to be a distinction without a difference, upon closer examination it becomes apparent that there is a real and substantial difference. The cause of action cannot be split up between the heirs but the amount recovered can be and is. The problem thus presented is this. Can an heir, after a cause of action has arisen in which he has an interest make an assignment of his interest?

Much has been said by courts in the past regarding the assignability and non-assignability of contingent interests at law and in equity. Law courts originally refused to recognize assignments of contingent interests of any kind. Later, because of the Chancellor's liberal enforcement of such assignments, the judges presiding in courts of law agreed to uphold assignments of contingent interests having a potential realization at the time of the assignment.

Modern courts, however, have adopted the more liberal equitable rule enforcing assignments of things not in esse but mere future possibilities so long as the assignments are fairly made for an adequate consideration without offending against public policy. Thus assignments of future contractual interests, anticipated interests in real or personal property, future wages or the expectancy of an heir in the estate of an ancestor have all been repeatedly upheld by modern decisions.

Courts have adopted the same rule where one who has sustained personal injuries assigns such proceeds as may possibly be recovered by him in an action brought against the tort-feasor. Moreover, a court of equity will enforce the assignment even though the cause of action is not assignable.. . .

The counter views are that they are not transferable because they either do not survive the death of the beneficiary who is entitled to the proceeds, or that the wrongful death statutes make no provision for recovery for "others," including transfers.

¶32 Here, nothing more than a transfer into a revocable inter vivos trust occurred for purposes of estate planning. The transfer was Katha's personal interest in the proceeds of the wrongful death suit to Katha, as the settlor, trustee, and beneficiary of the trust. The petitioner has not shown that consideration is necessary for this type of transfer. Prohibiting such a transfer is counterintuitive to the nature of a trust, general estate planning altogether. It is also contradictory to this Court's prior treatment of wrongful death proceeds.

¶33 Furthermore, Katha's unambiguous expressed intent as evidenced on the face of her will, the trust, and the assignment of the wrongful death proceeds was that: 1) the funds be placed in the trust when received; but 2) if they were not placed into the trust, her pour-over will would place them into the trust. Under the facts of this cause, it appears equity would recognize the transfer.

CONCLUSION

¶34 This cause concerns the transfer of expected proceeds of a wrongful death action into a trust for estate planning. Wrongful death actions, insofar as the statutory beneficiaries are concerned, are vested upon the wrongful death.

COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT AFFIRMED.

ALL JUSTICES CONCUR.

FOOTNOTES

(a) Entry of Appearance. All parties to any proceeding in the appellate courts shall immediately, but no later than filing the first document in the appellate court, file an Entry of Appearance on the forms set forth in Rule 1.301, by counsel or an unrepresented party representing himself or herself. Copies shall be served on all other parties. Attorneys shall use the form prescribed by Rule 1.301 Form No. 1, and parties representing themselves shall use the form prescribed by Rule 1.301 Form No. 2. An original and two (2) copies of the Entry of Appearance shall be filed with the Clerk of the Supreme Court.

Title 12 O.S. Supp. 2023 App. 1, Rule 1.25(b) provides in pertinent part:

The style and the sequence of the parties in an appeal shall be exactly the same as the style and sequence in the judgment or order from which the appeal is taken. 20 O.S. § 3002

Unless a prior version of a statute requires the application of significantly different statutory language to this cause, all citations to the Oklahoma Statutes herewithin are to the most recent version.

State ex rel. Oklahoma Bar Ass'n v. Layton, 2014 OK 21324 P.3d 1244Collier v. Reese, 2009 OK 86State ex rel. Oklahoma State Board of Examiners of Certified Shorthand Reporters v. Parrish, 2006 OK 91152 P.3d 202Mehdipour v. State ex rel. Department of Corrections, 2004 OK 1990 P.3d 546Myers v. Lashley, 2002 OK 1444 P.3d 553Ritter v. State, 2022 OK 73520 P.3d 37012 O.S. 2021 § 2202

A. This section governs only judicial notice of adjudicative facts.
B. A judicially noticed adjudicative fact shall not be subject to reasonable dispute in that it is either:

1. Generally known within the territorial jurisdiction of the trial court; or
2. Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

C. A court may take judicial notice, whether requested or not.
D. A court shall take judicial notice if requested by a party and supplied with the necessary information.
E. In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

In Ind. School Dist. #52 of Okla. County. v. Hofmeister, 2020 OK 56473 P.3d 475

In federal court, judicial notice of fact may occur when the fact is not subject to reasonable dispute and it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Oklahoma statute has similar language. Some federal courts have stated a court may take judicial notice of an indisputably accurate fact on the world wide web (or internet), and public records and government documents available from reliable sources on the internet, such as websites run by governmental agencies may be used for the purpose of judicial notice. Some federal courts have also concluded public agency actions, factfinding, and decisions may be appropriate for judicial notice. ...

. . .Only papers filed and exhibits presented to the trial court together with transcripts necessary to the appeal may be included in the record on appeal.. . .

Rule 1.28(b) provides in pertinent part:

. . .Materials which were not before the trial court at the time of the decision appealed are not properly part of the record on appeal without order of the trial court or the appellate court.. . .

A party may not supplement the record on appeal by injecting into it material that was not before the trial court. United States Through Farmers Home Administration v. Hobbs, 1996 OK 71921 P.2d 338

settlement-oklahoma-jail-prisoner-death-suit/.

12 O.S. Supp. 2020 §1053

A. When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, or his or her personal representative if he or she is also deceased, if the former might have maintained an action, had he or she lived, against the latter, or his or her representative, for an injury for the same act or omission. The action must be commenced within two (2) years

84 O.S. 2021 §213

Second. If the decedent leave no issue, the estate goes one-half (1/2) to the surviving husband or wife, and the remaining one-half (1/2) to the decedent's father or mother, or, if he leave both father and mother, to them in equal shares; but if there be no father or mother, then said remaining one-half (1/2) goes, in equal shares, to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, by right of representation. If decedent leave no issue, nor husband nor wife, the estate must go to the father or mother, or if he leave both father and mother, to them in equal shares: Provided, that in all cases where the property is acquired by the joint industry of husband and wife during coverture, and there is no issue, the whole estate shall go to the survivor, at whose death, if any of the said property remain, one-half (1/2) of such property shall go to the heirs of the husband and one-half (1/2) to the heirs of the wife, according to the right of representation.

Title 12 O.S. Supp. 2020 §1053

C. In proper cases, as provided by Section 9.1 of Title 23 of the Oklahoma Statutes, punitive or exemplary damages may also be recovered against the person proximately causing the wrongful death or the person's representative if such person is deceased. Such damages, if recovered, shall be distributed to the surviving spouse and children, if any, or next of kin in the same proportion as personal property of the decedent. For the purposes of actions maintained pursuant to subsection F of this section, "next of kin" as used in this paragraph shall mean the parent or grandparent who maintained the action as provided for in paragraph 3 of subsection F of this section.

2.01 Pour-Over to My Living Trust

All of my probate estate, excluding any property over which I might have a power of appointment, and after payment of expenses and taxes which are paid pursuant to this will, I give to the Trustee of the Williams Living Trust dated May 28, 2014, and executed prior to this will, to be added to the property of that trust and disposed of in accordance with its terms and any amendments prior to my death.

84 O.S. 2021 §44

4. The right of election of the surviving spouse provided for in paragraph 2 of this subsection is personal to the surviving spouse and may be exercised only during the lifetime of the surviving spouse. However, if there has been a guardian or conservator duly appointed by a court of competent jurisdiction, and such court has judicially determined the surviving spouse to be incompetent, then such guardian or conservator may make the election on behalf of the surviving spouse, but only if the same is approved by the court having jurisdiction over such guardian or conservator. . . . The guardian or conservator may be appointed in any state, and may have been appointed at any time prior to the expiration of the time permitted for the election to be made as provided in paragraph 3 of this subsection.. . . (Emphasis supplied).

Turner v. First Nat. Bank & Trust Co., of Muskogee, 1953 OK 199262 P.2d 897

1. Earl and Katha Williams established the Williams Family Trust on May 28, 2014;
2. The trust was lawfully created and funded;
3. Katha Williams assigned her interest in the litigation of the Estate of Elliott Williams to the Williams Family Trust;

4. Proceeds from the sale of Elliottt Williams wrongful death judgment in the amount of $1,178,057.44 shall be distributed to the Williams Family Trust; and
5. The appeal bond in the amount of 125% of the amount ordered to be distributed shall be required to stay enforcement of the order.

Noble v. Ft. Smith Wholesale Grocery Co., 1911 OK 310Hoffman v. Townsend, 1946 OK 325178 P.2d 89

Whipple v. Phillips and Sons Trucking, LLC., 2020 OK 75474 P.3d 339Wilson v. Gipson, 1988 OK 35753 P.2d 1349Thomas v. Cumberland Operating Co., 1977 OK 164569 P.2d 974

The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation, provided however, that the Legislature may provide an amount of compensation under the Workers' Compensation Law for death resulting from injuries suffered in employment covered by such law, in which case the compensation so provided shall be exclusive, and the Legislature may enact statutory limits on the amount recoverable in civil actions or claims against the state or any of its political subdivisions.

The purpose of Art. 23, §7 was to embody into the fundamental law, the constitution, the statutory right of action for wrongful death. Whipple v. Phillips and Sons Trucking, LLC., supra at ¶7; Thomas v. Cumberland Operating Co., supra at ¶21.

Ouellette v. State Farm Mut. Auto. Ins. Co., 1994 OK 79918 P.2d 1363Abel v. Tisdale, 1980 OK 161619 P.2d 608

12 O.S. 2021 §2017

D. ASSIGNMENT AND SUBROGATION OF CLAIMS. The assignment of claims not arising out of contract is prohibited. However, nothing in this section shall be construed to affect the law in this state as relates to the transfer of claims through subrogation.

In re Behm's Estate v. Gee, 213 P.2d 657 (Utah 1950) which we discuss further on pages 19 and 20 of this opinion.

Johnson By and Through Lackey v. Schick, 1994 OK 109882 P.2d 1059Rose Group, L.L.C. v. Miller, 2003 OK CIV APP 1864 P.3d 573

Parker v. National Zinc Co., 1965 OK 152406 P.2d 493

12 O.S. 2021 §2017

Abel v. Tisdale, see note 17, supra; Brookshire v. Burkhart, 1929 OK 428283 P. 571

Ouellette v. State Farm Mut. Auto. Ins. Co., see note 18, supra.

60 O.S. 2021 §175.2

A trust in relation to real and personal property, or either of them, may be created for any purpose or purposes for which a contract may be made.

C&C Tile v. Independent Sch. Dist. No. 7 of Tulsa, 1972 OK 137503 P.2d 554

60 O.S. 2021 §175.6

A trust may be created by:

A. A declaration by the owner of property that he holds it as trustee for another person, or for himself and another person or persons; or

B. A transfer inter vivos by the owner of property to another person as trustee for the transferor or for a third person; or

C. A transfer by will by the owner of property to another person as trustee for a third person; or

D. An appointment by one person having a power of appointment to another person as trustee for the donee of the power or for a third person; or

E. A promise by one person to another person whose rights thereunder are to be held in trust for a third person; or

F. A beneficiary may be a cotrustee and the legal and equitable title to the trust estate shall not merge by reason thereof. Provided, however, that no trust in relation to real property shall be valid, unless created or declared:

1. By a written instrument subscribed by the trustor or by his agent thereto authorized by writing;

2. By the instrument under which the trustee claims the estate affected.

60 O.S. 2021 §175.3

G. "Principal" means any real or personal property which has been so set aside or limited by the owner thereof, or a person thereto, legally empowered that it and any substitutions for it are eventually to be conveyed, delivered, or paid to a person, while the return therefrom, or use thereof, or any part of such return or use is in the meantime to be taken or received by or held for accumulation for the same or another person.

Welch v. Crow, 2009 OK 20206 P.3d 599Rickard v. Coulimore, 2022 OK 9505 P.3d 920

Assignability of Proceeds of Claim for Personal Injury or Death, 33 A.L.R. 4th 82 (Originally published in 1984), superseding in part, R.D. Hursh, Assignability of Claim for Personal Injury or Death, 40 A.L.R.2d 500 (Originally published in 1955).

Anderson v. Anderson, 12 Ga. App. 706, 78 S.E. 271 (Ga. App. 1913).

Rice v. Postal Telegraph-Cable Co., 174 A.D. 39, 160 N.Y.S. 172 (N.Y. Sup. Ct. 1916); Quin v. Moore, 1 E.P. Smith 432, 15 N.Y. 432, 1857 WL 7060 (N.Y. App. 1857).

Assignability of Proceeds of Claim for Personal Injury or Death, 33 A.L.R. 4th 82 (Originally published in 1984), superseding in part, R.D. Hursh, Assignability of Claim for Personal Injury or Death, 40 A.L.R.2d 500 (Originally published in 1955).

In re Wallace Revokable Trust, 2009 OK 34219 P.3d 536Peyton v. McCaslin, 1966 OK 4417 P.2d 316

Parker v. National Zinc Co., 1965 OK 152406 P.2d 493City of Shawnee v. Cheek, 1913 OK 739137 P. 724

Aetna Casualty & Surety Co. v. Young, 1924 OK 394231 P. 261